Daniel V. PRESNICK

v.

Dorothy BERGER.

Civ. No. 3:93–1003 (JAC).

United States District Court,
D. Connecticut.

Nov. 5, 1993.

**476**

Daniel V. Presnick, pro se.

John K. Knott, Jr., Priscilla C. Mulvaney, Cheshire, CT, for defendant.

---

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The plaintiff, an adult, non-senior resident of Orange, Connecticut, has brought this "reverse age discrimination" action against the defendant Dorothy Berger, the First Selectman of the Town of Orange, alleging that the Town's fee waiver, which permits all residents of the Town of Orange who are sixty years of age and older to use the facilities at the Orange Pool and Fitness Room without charge, violates the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985(3). Pending before the court are the plaintiff's Motion for Summary Judgment Re: Affirmative Defenses (filed September 16, 1993); the plaintiff's Motion for Order Re: Sixth Special Defense (filed September 23, 1993); and the defendant's Cross Motion for Summary Judgment (filed September 29, 1993).

### DISCUSSION

The fee waiver at issue in this case was proposed and recommended by the Orange Park and Recreation Commission and approved by the Orange Board of Selectmen on September 15, 1992. The plaintiff alleges in his Amended Complaint (filed June 27, 1993) ("Complaint") that the fee waiver denied him equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment and deprived him of a liberty and property interest in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1983 and 1985(3).

As an initial matter, it should be noted that the plaintiff's Constitutional claims are vague, conclusory, without any factual foundation, and without any support whatsoever in the record. Indeed, the plaintiff does not describe with any particularity how a policy which allows the elderly residents of the Town of Orange to utilize the town's recreational facilities without charge discriminates against other patrons of these facilities. Second, the plaintiff does not define in any way the property or liberty interest of which he was allegedly deprived. Finally, the plaintiff has not alleged in his Complaint any conduct or actions by the defendant which would even remotely suggest a civil rights conspiracy in violation of 42 U.S.C. § 1985(3).

Under these circumstances and on this record, the court would indeed be justified in summarily dismissing the plaintiff's claims on their face without any further consideration. Nevertheless, the court will assess in detail

each of the three Constitutional claims apparently asserted by the plaintiff.

## I.

### A.

■ First, the plaintiff alleges that the fee waiver is a violation of equal protection. The Constitution, however, does not preclude the creation of classifications that result in disparate treatment; the Equal Protection Clause does not mandate that every individual be treated exactly alike. *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 725, 93 S.Ct. 1224, 1228, 35 L.Ed.2d 659 (1973). It is well settled that governments may draw lines or make decisions which treat individuals or entities differently. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (states are accorded wide latitude in the regulation of their local economies and rational distinctions may be made with substantially less than mathematical exactitude); *Lehnhausen v. Lake Shore Auto Parts, Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation), *reh'g denied*, 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200, 201 (1973); *McGowan v. Maryland*, 366 U.S. 420, 427, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) (states have wide scope of discretion in enacting laws which affect some groups differently than others). The Equal Protection Clause requires only that persons who are similarly situated be treated similarly. *See Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways").

However, governmental classifications "must be reasonable ... and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced may be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

■ Absent the implication of a fundamental right or the use of an inherently suspect classification, disparate treatment violates the Equal Protection Clause only if it has no "reasonable" or "rational" basis. *See Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983); *Castellano v. Bd. of Trustees*, 937 F.2d 752, 755 (2d Cir.), *cert. denied*, ⎯ U.S. ⎯, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

■ The plaintiff has established neither a fundamental right nor the use of an inherently suspect classification. More specifically, the plaintiff has not brought to the court's attention—and the court is not aware of—a single case which stands for the proposition that there is a fundamental right to the free use of a town pool and fitness room. Without any authority for this far-fetched claim, the court finds that no fundamental right has been affected.

Additionally, the plaintiff has not—and cannot—suggest that adult, non-senior residents constitute a suspect class. Indeed, the Supreme Court has repeatedly asserted that classifications based on age are not suspect classifications subject to strict scrutiny analysis. *See Gregory v. Ashcroft*, ⎯ U.S. ⎯, ⎯, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 441, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985); *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976).

Accordingly, the fee waiver will pass constitutional muster if it satisfies the so-called "rational basis" test—*i.e.*, if it bears a reasonable relation to a legitimate governmental objective. *New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517; *Thomas v. Sullivan*, 922 F.2d 132, 136 (2d Cir.1990). *See Vance v. Bradley*, 440 U.S. at 97, 99 S.Ct. at 942–43.

■ The burden is on the complaining party to demonstrate that the classification has no rational basis and the standard of review is an extremely deferential one. The Fourteenth Amendment permits governments a wide scope of discretion, and a government's actions are presumed to be consti-

tutionally valid. The Supreme Court described this presumption of legality in *McGowan v. Maryland*, where it upheld exemptions for certain business from Maryland's Sunday closing laws:

> The Constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 U.S. at 425–26, 81 S.Ct. at 1105. In *Vance v. Bradley*, the Court upheld different mandatory retirement ages for different government departments:

> [I]n cases where these considerations [fundamental rights or suspect classifications] are absent, courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.... Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

440 U.S. at 96–97, 99 S.Ct. at 942–43.

In sum, the fee waiver at issue in this case, an enactment of the publicly-elected Orange Board of Selectmen, will be presumed valid unless the plaintiff can demonstrate that it bears no rational relationship to any conceivable legitimate governmental objective.

### B.

■ The court finds that the fee waiver does indeed bear a rational relation to a legitimate governmental objective. Indeed, one can readily ascertain the natural and substantial differences between the seniors and the younger population in Orange. The physical and mental health of seniors clearly differs from that of the younger Orange residents. The policy of the Town or Orange embodied in the fee waiver seeks to encourage seniors to come and exercise at the town facilities—where they can improve their physical condition, socialize with fellow residents from Orange, participate in other senior programs which are housed in the town community center, and simply relax and enjoy themselves. These opportunities clearly help to enhance and promote the health and well-being of the seniors—as well as the overall public welfare of a town inhabited by active, healthy seniors. Furthermore, just as the public school system, for example, provides many adult, non-senior town residents who have children with a direct benefit in return for their payment of taxes, the fee waiver provides seniors with a tangible benefit in return for *their* payment of taxes.

The fact that the fee waiver does not depend on the ability to pay does not in any way affect the court's conclusion that the town's policy in this regard is a rational and legitimate one. Regardless of income, seniors have special physical and mental needs, and the fee waiver is designed to encourage use of the pool and fitness center by *all* seniors.

In sum, the court finds that encouraging the health, well-being, and happiness of the town's seniors is a legitimate governmental objective. The court further finds that the fee waiver has a direct and rational relation to this legitimate objective. Accordingly, the fee waiver does not violate the Equal Protection Clause, and the defendant's motion for summary judgment as to the plaintiff's equal protection claim must be granted.

### II.

■ Second, the plaintiff alleges that the fee waiver deprives him of a property and liberty interest in violation of 42 U.S.C. § 1983. Inasmuch as the court finds that the plaintiff has not been deprived of any property or liberty interest and that—even if he were—he was provided with due process, the

defendant's motion for summary judgment as to this claim must also be granted.

### A.

As noted above, the plaintiff has failed to describe with any degree of particularity precisely what this interest consists of, and the court is at a loss to find a valid property or liberty interest that has been affected in any manner. Indeed, the plaintiff has not pointed to a single authority—and the court is unable to find any authority—even suggesting that he has a property or liberty interest in the free use of the town's recreational facilities.

■ The existence of a property interest is necessarily a question of state law.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Here, the plaintiff has not suggested, much less demonstrated, that any state laws, judicial decisions, long-standing policies, or rules or understandings of any sort have created a legitimate claim of entitlement to the free use of town recreational facilities.

The plaintiff's vague and conclusory claim that he has somehow been deprived of a liberty interest is even more untenable. In sum, the court finds that the plaintiff simply has not been deprived of any property or liberty interest.

### B.

■ Even if the plaintiff somehow possessed the property or liberty interest he claims to hold, the record reveals that any alleged deprivation of this interest was accompanied by ample process. The fee schedule at issue was first proposed and recommended by the Orange Park and Recreation Commission and ultimately approved by the Orange Board of Selectmen, a publicly-elected body, at a September 15, 1992 meeting at Town Hall at which the plaintiff was present. *See* Minutes of Meeting of Board of Selectmen, September 15, 1992, attached to the Affidavit of Dorothy Berger (filed Sept. 29, 1993) ("Berger Affidavit"). The record also demonstrates that the plaintiff had discussed this policy with the defendant on various dates at various town meetings. *See* Defendant's Answers and Objections to Plaintiff's Interrogatories (dated June 10, 1993), attached to Berger Affidavit.

Evidently, the public, deliberative political process through which this proposal become an official town policy provided notice to those who objected to the fee waiver and an opportunity to present any objections to the Orange Board of Selectmen. Furthermore, the plaintiff has a continuing and readily available remedy in the local political processes of the Town of Orange.

In sum, even if the court did accept (which it does not) the plaintiff's untenable contention that he was somehow deprived of a property or liberty interest, the court would find that the plaintiff was afforded the process due in the circumstances presented, and that, as a result, no constitutional violation occurred.

Accordingly, the defendant's motion for summary judgment on the plaintiff's claim that he was deprived of a property or liberty interest in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 must be granted.

### III.

Finally, the plaintiff appears to suggest that the fee waiver was the result of a civil rights conspiracy in violation of 42 U.S.C. § 1985(3). It is worth reiterating that the plaintiff has not alleged in the Complaint any conduct or acts of the defendant that would—even at a bare minimum—suggest the existence of a civil rights conspiracy.

Moreover, even if the plaintiff had supported his claim of conspiracy by alleging specific acts or omissions by the defendant, the conspiracy claim would fail in any event.

 To state a claim under 42 U.S.C. § 1985(3), the plaintiff must allege that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Not only has the plaintiff failed to make any factual allegations to support a claim of a civil rights conspiracy, he has also failed to point to a single case—and the court is not aware of any authority whatsoever—that stands for the proposition that "a reverse age discrimination" claim sets forth a viable cause of action under 42 U.S.C. § 1985(3). Put simply, there is no evidence whatsoever on this record of any racial or otherwise class-based, invidiously discriminatory animus. Accordingly, the plaintiff's claim under 42 U.S.C. § 1985(3) must fail and the defendant's motion for summary judgment on that claim must be granted.

### IV.

Inasmuch as the court has dismissed all of the plaintiff's federal law claims—*i.e.,* all of the claims over which it has original jurisdiction—the court, pursuant to 28 U.S.C. § 1367(c)(3), declines, in the exercise of its discretion, to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, all of the plaintiff's state law claims must be dismissed and the defendant's motion for summary judgment on these claims must be granted.

### CONCLUSION

Based on the record, and for the reasons stated above, the defendant's Cross Motion for Summary Judgment (filed September 24, 1993) (doc. # 25) is hereby GRANTED. Judgment shall enter in this action against the plaintiff in favor of the defendant. This action is hereby DISMISSED with prejudice.

Accordingly, the plaintiff's Motion for Summary Judgment Re: Affirmative Defenses (filed September 16, 1993) (doc. # 20) and the plaintiff's Motion for Order Re: Sixth Special Defense (filed September 23, 1993) (doc. # 23) are hereby DENIED as moot.

It is so ordered.