Daniel V. PRESNICK,

v.

**TOWN OF ORANGE, et al.**

**No. 3:99CV256 (JBA).**

United States District Court, D. Connecticut.

March 14, 2001.

216

Daniel V. Presnick, Orange, CT, pro se.

David S. Doyle, The Marcus Law Firm, New Haven, CT, Stephen P. Fogerty, Robert Avery Rhodes, Halloran & Sage, Westport, CT, for Town of Orange.

## RULING ON MOTION FOR SUMMARY JUDGMENT
### [DOC. # 29]

ARTERTON, District Judge.

### I. Introduction

At a meeting of the Orange Board of Selectmen on February 16, 1996, defendant Robert Sousa announced that the public meeting was adjourned and that the Board was going into private session to discuss a proposed contract with the teacher's union. All but one of the people attending the meeting complied with Sousa's request to leave. Plaintiff Daniel Presnick, insisting that he had a right to be present, refused to leave, and eventually, Sousa called the police. After interviewing various Board members and members of the public and taking a statement from Sousa, police officers arrested plaintiff for criminal trespass, once he made it plain that he would not leave voluntarily. No force was used against plaintiff, and he was released within two hours after processing. The criminal trespass charges were later dismissed.

Plaintiff has now sued the Town of Orange, First Selectman Robert Sousa, the Orange Board of Selectmen, the Orange Police Commission and Orange Chief of Police Edward DeLaney, alleging that defendants violated 42 U.S.C. §§ 1983 and 1985, and asserting state law claims of false arrest, denial of equal protection under the Connecticut constitution, intentional infliction of emotional distress, negligent infliction of emotional distress and implied

libel. Plaintiff seeks money damages, punitive damages and injunctive relief.

Defendants claim they are entitled to summary judgment on the state and federal false arrest claims because none of the named defendants arrested plaintiff, there was probable cause to arrest plaintiff, and defendants are entitled to qualified immunity. They also move for summary judgment on plaintiff's equal protection claims, the libel claim and the emotional distress claims.

## II. Discussion

### A. *Summary judgment/notice to pro se plaintiff*

A court shall grant a motion for summary judgment under Fed.R.Civ.P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Silver v. City University*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the initial burden of establishing that no genuine issue of material fact exists and that the undisputed facts show that she is entitled to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988).

The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548, 91 L.Ed.2d 265. A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (*quoting Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); *see also Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348 (material dispute requires more than "metaphysical doubt").

Where summary judgment is sought against a *pro se* litigant, the Court must be especially careful because it is not "obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). For this reason, the Second Circuit has reversed grants of summary judgment against *pro se* litigants where the district court failed to inform the *pro se* litigant that failure to respond to a motion for summary judgment would result in dismissal of the case, *see, e.g., Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994) (per curiam), and where there is no indication that the *pro se* litigant understood that he was "required to present counter-affidavits or documentary evidence as to every genuine issue of material fact that he wished to preserve for trial," *Vital v. Interfaith Medical Center*, 168 F.3d 615, 621 (2d Cir.1999).

However, "[t]here is no requirement that the district court affirmatively advise the *pro se* litigant of the nature and consequences of a summary judgment motion if the *pro se* litigant has otherwise been ade-

quately notified or is already aware of such consequences." *M.B. # 11072–054 v. Reish,* 119 F.3d 230, 232 (2d Cir.1997) (per curiam). Factors that the Second Circuit has considered in determining whether the *pro se* litigant had sufficient notice include whether the district court or the opposing party has provided notice, whether the response from the litigant indicates that he understands what is required to defeat summary judgment and the extent of the litigant's participation in the proceedings. *See Vital,* 168 F.3d at 621.

■ Although Mr. Presnick did not receive notice from the Court informing him of the nature and consequences of summary judgment, in this situation, there is ample evidence to support the conclusion that he had an adequate understanding of what was required.

First of all, Mr. Presnick is a lawyer. *See* Deposition of Daniel Presnick ("Presnick dep.") at 4–5 (Mr. Presnick graduated from Western New England School of Law in 1977 and was in private practice until 1989); *see also Presnick v. Santoro,* 832 F.Supp. 521, 526 (D.Conn.1993) (Cabranes, J.) (noting that "[b]ecause he has been trained in the law and practiced law for some years in this state, plaintiff may not in fact be due as much of the court's 'generosity' as is appropriate for *pro se* litigants who do not have such experience"). Although Mr. Presnick's rights to practice were revoked in 1989, he has continued to represent himself in a variety of lawsuits. *See, e.g., Presnick v. Delaney,* 110 F.Supp.2d 74 (D.Conn.1999) (suit alleging Orange Park and Recreation Board and chief of police acted unconstitutionally in suspending him from town pool and subsequently arresting him for trespass);

*Presnick v. Berger,* 837 F.Supp. 475 (D.Conn.1993) (reverse age discrimination suit claiming that town policy of permitting senior citizens to use pool and fitness facilities free of charge violated constitution); *Santoro,* 832 F.Supp. 521 (suit for damages and injunctive relief against court reporter and chief clerk of Connecticut Superior Court for alleged negligence in failing to file certain documents).

Second, plaintiff responded to defendant's motion with a twenty-eight page opposition and an affidavit [Doc. # 36] stating his version of the events of February 13, 1996 as well as conclusory allegations about the legal significance of those events.[1] Defendants' reply brief clearly stated the standard for summary judgment and argued that plaintiff had not submitted evidence supporting his conclusory allegations in his affidavit relating to "the motivation of the defendants and his opinion that his arrest was not supported by probable cause." Doc. # 38 at 3. In response, plaintiff was permitted to file a sur-reply and a supplemental affidavit. *See* Supp.Aff. [Doc. # 39] ¶ 1 ("I, Daniel V. Presnick, being duly sworn, deposes and says the following to supplement his first affidavit by providing additional facts, which the defendants have alleged the plaintiff did not supply."). In his supplemental affidavit, plaintiff elaborated on the factual basis for his claims.

Finally, this is not a case that turns on disputed issues of material fact. Indeed, plaintiff's deposition testimony (submitted in the entirety by defendants) shows no apparent disagreement with defendants' version of the events, and plaintiff's Supplemental Memorandum of Law states that "Most of the facts asserted by the

---

1. *See, e.g.,* Doc. # 36 at ¶ 2 (plaintiff was arrested at Town Hall when he refused to leave); ¶ 3 (plaintiff asserted his right to be present); ¶ 4 (although plaintiff suffered no physical injuries, his reputation was damaged and his constitutional rights were violated); ¶ 5 (plaintiff does not believe there was probable cause for his arrest).

plaintiff are not (and they could not be) refuted by the defendant[s]." [Doc. # 39]. The crux of the dispute between Mr. Presnick and the defendants rests on what legal significance to give to these undisputed facts.

Under these circumstances, Mr. Presnick had adequate notice of what was required to survive summary judgment. *See Vital*, 168 F.3d at 621 ("we have recognized that a District Court need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment").

### B. *Plaintiff's Section 1983 claims against Sousa and the Orange Board of Selectmen*

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Therefore, the first step in any such claim is to identify the specific constitutional right allegedly infringed. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443, (1989); *Baker*, 443 U.S. at 140, 99 S.Ct. 2689. While it is less than clear from plaintiff's complaint what underlying constitutional violations he alleges, in his opposition to summary judgment, plaintiff states that his complaint "alleges that he has a right to attend [the February 13, 1996] meeting and that his arrest and subsequent exclusion was a violation of his constitutional rights under 42 U.S.C. § 1983." Pl.'s Mem. at 1. In his "Supplemental

Memorandum of Law" [Doc. 39], plaintiff states that his "claim is based on his 'liberty' interest, which is protected by the Fourteenth Amendment to the United States Constitution. This right is founded in both the First Amendment and Article One, § 2 that creates what is colloquially referred to as 'the public's right to know.' The plaintiff is asking the court to extend their protection by hold[ing] that—absent exigent circumstances—a warrant is required to close these meeting[s]." Pl.'s Supp.Mem. at 2.

Plaintiff's complaint alleges false arrest and denial of equal protection, respectively. Therefore, his § 1983 claims will be construed as based on those two constitutional violations as well as the First Amendment.[2]

#### 1. False arrest

According to defendants, plaintiff's § 1983 false arrest claim fails as a matter of law because it is undisputed that none of the named defendants placed plaintiff under arrest or confined him in any way. Defendant argues that unlike a claim for malicious prosecution, which may be brought by a plaintiff against a person who initiates criminal proceedings against him, a claim for false arrest lies only against persons who actually confined the plaintiff. In the alternative, defendants argue that they are entitled to summary judgment because there was probable cause to arrest Mr. Presnick.

In response, plaintiff claims that "[t]he allegations of the plaintiff are that the defendants orrcastrated [sic] the arrest of the plaintiff by the use of their implied authority to intimidate the police into making arrest." According to plaintiff, "[i]t

---

**2.** Mr. Presnick's Complaint also asserts state law equal protection and false arrest claims. *See* Compl. Counts Two and Three. As dis-

cussed below, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

would be constitutional offense—and intellectual cowardice—to condemn the actions of the officers without condemning the actions of this defendant who were the participatory instigators of these constitutional violations. These public officers demonstrated the malice and it is there [sic] actions that deserve condemnation. . . ." Pl.'s Opp. [Doc. # 35] at 2.[3]

■ The existence of probable cause defeats a claim for false arrest. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Therefore, defendants are entitled to summary judgment on this claim if there was probable cause to arrest Mr. Presnick.

Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir.1993) (*quoting Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989)). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (*citing Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir.1994); *Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd*, 993 F.2d 1534 (2d Cir.), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993)).

■ Plaintiff was arrested on the charge of criminal trespass in violation of Conn.Gen.Stat. § 53a–107 [4] after he refused to leave the room when the Board went into non-public session. Despite plaintiff's belief and continued insistence that this was a public meeting at which he had a right to be present, it is undisputed that Sousa asked plaintiff to leave, and that Sousa called the police only after plaintiff continued to refuse to leave. Upon their arrival, the police interviewed several members of the public and Sousa and the secretary of the Board of Selectmen, and took a signed statement from Robert Sousa indicating that the Board was going into a private session, that plaintiff had been asked to leave, and that the Board sought assistance from the police to remove plaintiff from the premises. Orange Police Department Incident Reports, Defs.' Ex. C. After the statement was taken, the officers again asked plaintiff to leave voluntarily. Upon his continued refusal, officers arrested plaintiff. *Id.*; Presnick Aff. ¶ 2. Under these circumstances, the police clearly had probable cause to believe that Mr. Presnick had violated Conn.Gen.Stat. § 53a–107.

---

**3.** From plaintiff's argument in opposition to summary judgment, it appears that his "false arrest" claim against defendant Sousa and the Board of Selectmen may have been intended as a malicious prosecution claim instead. However, as the existence of probable cause defeats claims for both false arrest and malicious prosecution, defendants are entitled to summary judgment on this claim if there was probable cause to arrest Mr. Presnick, regardless of how his claim is characterized. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996) (lack of probable cause is an element of malicious prosecution).

**4.** "A person is guilty of criminal trespass in the first degree when: (1) knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person. . . ."

Plaintiff's argument that because he allegedly had a right to be at the meeting there was not probable cause to arrest him is without merit, in light of Sousa and other witnesses' statements to the police. Under the Freedom of Information Act, Conn.Gen.Stat. § 1–18a et seq., defendant Sousa and the Board of Selectmen were entitled to go into private session to discuss matters related to collective bargaining. Relying on this statute, the Board of Selectmen informed the police officers that this was a non-public meeting under Conn. Gen.Stat. § 1–18a(b), and the police therefore had a reasonable belief that plaintiff was not licensed or privileged to remain in the meeting. Once these facts were established, the police had probable cause to arrest plaintiff for criminal trespass.

■ Finally, Mr. Presnick claims that even if there was probable cause to arrest him, his arrest was unconstitutional because he was arrested without a warrant. However, "[p]olice officers may arrest an individual when apprehended in the act or upon the speedy information of others." *Presnick v. Delaney*, 110 F.Supp.2d 74, 80–81 (D.Conn.1999) (*citing* Conn.Gen. Stat. § 54–1f(a)) (permitting warrantless felony and misdemeanor arrests when "the person is taken or apprehended in the act or on the speedy information of others"); *see also State v. Kuskowski*, 200 Conn. 82, 86, 510 A.2d 172 (1986); *State v. Santiago*, 224 Conn. 494, 498, 619 A.2d 1132 (1993). Defendants are therefore entitled to summary judgment on plaintiff's false arrest claim under § 1983.

*2. First Amendment*

While plaintiff's complaint does not clearly allege a First Amendment violation, at his deposition, plaintiff claimed that even if there were probable cause to arrest him, he could not be arrested without a warrant: "If someone is nonviolent and saying, 'I'm not going to leave for political reasons,' on public property, where I have a fundamental right to be ... I think they need a warrant." Presnick dep. at 52.

■ Plaintiff cites no legal support for his novel theory that when a person claims to be exercising First Amendment rights, he cannot be arrested in a public place without a warrant or, at a minimum, exigent circumstances. According to plaintiff, because the Supreme Court held in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) that absent exigent circumstances, a warrant is needed to make an arrest in a private home, "[t]his same rationale should be extended to a public forum where a person is attempting to vindicate his First Amendment right to know. This protection is needed to protect and vindicate this important constitutional right since only a learned and impartial magistrate could weigh these compelling interests and achieve constitutional equilibrium." Pl.'s Mem. at 15. However, plaintiff's argument overlooks the fact that the Supreme Court has elsewhere held that "the Fourth Amendment *permits* warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Florida v. White*, 526 U.S. 559, 565, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) (*citing United States v. Watson*, 423 U.S. 411, 416–24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)) (emphasis added). "In explaining this rule, [the Court drew] upon the established 'distinction between a warrantless seizure in an open area and such a seizure on private premises.' " *Id.* (*quoting Payton*, 445 U.S. at 587, 445 U.S. 573). There is thus no basis under *Payton* for extending the warrant requirement to public spaces when the suspect claims that he is exercising his First Amendment rights.

■■ Plaintiff's argument that a warrant was required for his arrest is also flawed in that a person does not have a right to attend a private meeting of a municipal board simply because the meeting occurs within a public building such as the Town Hall. *See United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) ("the First Amendment does not guarantee access to property simply because it is owned or controlled by the government"). The FOIA commission's determination that this municipal board meeting did not fall within FOIA's definition of meetings required to be held in public was upheld by the Connecticut superior and appellate courts, and will not be revisited here. *See Presnick v. Freedom of Information Commission*, 53 Conn.App. 162, 729 A.2d 236 (1999).

■ Plaintiff's opposition to summary judgment also appears to raise a vagueness challenge to the FOIA definition of "meeting," claiming that it is unconstitutional because it permits the Board of Selectmen to expel people from meetings without providing adequate guidance and did not give reasonable notice of the prohibited conduct. *See* Doc. 35 at 11–12, 22–25.[5] A statute is unconstitutionally vague when persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The FOIA statute plaintiff challenges requires certain meetings to be held in public, and specifically exempts other types of meetings from that requirement.

■ As the Connecticut Supreme Court observed in *Wilson v. Freedom of Information Commission*, 181 Conn. 324, 327, 435 A.2d 353 (1980):

> The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records.... [H]owever, the act does not confer upon the public an absolute right to all government information. Its careful delineation of the circumstances in which public meetings may be held in executive session; General Statutes § 1–18a(e); and in which agency records, or preliminary drafts or notes of such records, may properly remain undisclosed; General Statutes s 1–19(b); reflects a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality.

The exception to FOIA that the Board relied on states that "meeting" shall not include "strategy or negotiations with respect to collective bargaining." While plaintiff may disagree with the wisdom of this exception, it is not vague, as it does not require people of average intelligence to guess at its application. Defendants are therefore entitled to summary judgment on plaintiff's First Amendment § 1983 claim.

### 3. Equal protection

Defendants argue that plaintiff's equal protection claim under the U.S. Constitution must fail because he is not a member of a suspect class or group, and cannot establish that the defendants' actions in calling the police to remove him from the

---

5. Although plaintiff asserts in passing that FOIA "suffer[s] from overbreadth—a separate constitutional problem," Doc. # 35 at 24, he nowhere explains in what way the FOIA definitions are overbroad, and his substantive arguments in opposition to summary judgment are limited to vagueness. As plaintiff has failed to elaborate on his overbreadth challenge, the Court is unable to consider it. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Town Hall amounted to selective prosecution. Defendants claim that plaintiff has not provided any evidence that he was treated differently than any similarly situated individuals and that there was any intent to discriminate against him based on malice or bad faith.

Plaintiff counters that he is asserting an equal protection violation as a "class of one," relying on *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) and *Esmail v. Macrane,* 53 F.3d 176 (7th Cir.1995), in that defendants violated the Fourteenth Amendment by "first suspending his right to be present at this meeting of the Board of Selectmen and instigating his subsequent unlawful arrest. The Plaintiff was selected for punishment because of the malice generated by his First Amendment activities." Pl.'s Mem. at 3. According to plaintiff, "[t]he defendants' intentions were to intimidate like-minded voters into political submission and to deny them the opportunity to vote for an alternative candidate. By arbitrarily inflicting punishment on a clearly innocent citizen, without due process, voters were warned: 'resistance is futile.' " *Id.* at 5.

■ In *Willowbrook,* the Supreme Court noted that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment." *Willowbrook,* 120 S.Ct. at 1074. In this Circuit, it is established that a plaintiff can establish a violation of equal protection where "the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as ... intent to inhibit or punish the exercise of constitutional rights, or malicious or bad

faith intent to injure a person." *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996).

■ Although plaintiff insists that his "affidavit establishes his claims that a trial was warranted because of the defendants' selective prosecution, which was motivated by animus and ill [will] caused by his First Amendment activities," neither his affidavit or his supplemental affidavit supply sufficient facts from which a reasonable juror could infer that defendants' actions were done with a bad faith intent to injure him or retaliate against him. Plaintiff's affidavit states that:

> I have opposed many of the programs propagated by the Orange Board of Selectmen. I have debated some of the members of the Board both during election and as a private citizen. There are numerous examples of bitter political division between the plaintiff and many member[s] of this Board. The trier of fact can infer malice in the treatment of the plaintiff.... The defendant[s] have shown malice against the plaintiff on other occasion[s] such as by refusing to allow the plaintiff to speak and by threatening the plaintiff with arrest for the lawful exercise of his constitutional rights.

Doc. # 39 at ¶ 1, 3.

■ Even assuming that these allegations of malice were sufficiently specific to create a disputed issue of material fact as to whether the defendants acted maliciously or to retaliate against him for exercising his First Amendment rights, *see Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995) ("a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment"), defendants would be entitled to summary judgment because Mr. Presnick has failed to show that he was treated differently from anyone else. *See Economic Opportunity Commission of*

*Nassau Cty. v. County of Nassau*, 106 F.Supp.2d 433, 440 (E.D.N.Y.2000) (noting that "class of one" plaintiffs are not relieved from the burden of showing that other similarly situated people were treated differently); *see also Brown v. Oneonta*, 195 F.3d 111, 119 (2d Cir.1999) (proof that the plaintiff has been treated differently from others similarly situated is an essential component of an equal protection claim).

Plaintiff claims that he was "the only person ever arrested or subjected to an expulsion." Pl.'s Mem. at 6. In the absence of any evidence that anyone else ever refused to leave after the Board of Selectmen declared a private session or other circumstances that could be found "similar," however, there is no basis from which to infer that plaintiff was treated differently than anyone else under similar circumstances. In *Esmail*, 53 F.3d 176, relied on by Mr. Presnick in support of his claim that he has sufficient evidence of selective prosecution to defeat summary judgment, the plaintiff's complaint had alleged that the defendant denied his requests for renewal of his liquor license on the basis of minor violations while " 'maintaining a policy and practice of routinely granting new liquor licenses as well as renewing existing licenses requested by people who had engaged in the same or similar conduct.' " 53 F.3d at 178. Not only has plaintiff not plead similarity, but he has not set forth any evidence of similarity in opposition to summary judgment.

As the court observed in *Economic Opportunity Commission of Nassau County*, "[t]he equal protection clause is essentially a direction that all persons similarly situated should be treated alike. Without an allegation that other persons similarly situated were treated differently, the 'equal' portion of the Equal Protection Clause becomes meaningless." *Id.* at 441 (*citing*

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Defendants Sousa and the Orange Board of Selectmen are therefore entitled to summary judgment on plaintiff's claim that they denied him equal protection in violation of § 1983.

C. *Section 1983 Claims against Town of Orange, Board of Police Commissioners, Chief of Police Edward Delaney*

Under *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to establish municipal liability for actions of employees alleged to be unconstitutional, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (*quoting Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983)). Defendants argue that they are entitled to summary judgment because plaintiff has identified no underlying constitutional violation, official custom or policy, or causal connection between that policy and any violation.

Plaintiff's claim against the Board of Police Commissioners and the Town appears to be based on his belief that by failing to propagate policies or instruct police officers that an individual who claims to be exercising his First Amendment rights in a public place may only be arrested pursuant to a warrant or in exigent circumstances, these defendants violated the Constitution.

As discussed above, Mr. Presnick has not shown any such fundamental right and thus no underlying constitutional violation for which the Town, the Board of Police Commissioners or Chief Delaney could be responsible. As plaintiff's arrest

by the Orange police without a warrant was lawful, the alleged failure to train officers not to arrest people without a warrant if they assert a First Amendment defense in a public place cannot be unlawful. Defendants Town of Orange, Chief of Police Delaney and the Orange Board of Police Commissioners are entitled to summary judgment on plaintiff's § 1983 claims.

### D. *Section 1985(3) Claims*

■ The record also does not demonstrate disputed evidence such that reasonable jurors could find a violation under 42 U.S.C. § 1985(3) for conspiracy to violate plaintiff's civil rights, which "must be motivated by racial or related class-based discriminatory animus." *Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir.1996). Moreover, the Court has concluded that plaintiff has failed to proffer sufficient evidence of any constitutional deprivation, a necessary element of a § 1985 conspiracy claim. *See Gray v. Darien*, 927 F.2d 69 (2d Cir.1991) (granting summary judgment on § 1985 conspiracy claim "on the basis that there has been no showing of a constitutional deprivation"). All defendants are therefore entitled to summary judgment on plaintiff's § 1985 claims.

### E. *Remaining State Law Claims*

■ As defendants are entitled to summary judgment on all of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims for false arrest, denial of equal protection, intentional and negligent infliction of emotional distress and implied libel pursuant to 28 U.S.C. § 1367(c)(3).

### III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Doc. # 29] is GRANTED. Defendants are entitled to summary judgment in their favor on plaintiff's 42 U.S.C. § 1983 and § 1985(3) claims [Count One] and the remaining state law counts are dismissed.

The Clerk is directed to close this case.

IT IS SO ORDERED.