Basim ESMAIL, Zabco Enterprises, Incorporated, and Nazco Enterprises, Incorporated, Plaintiffs–Appellants,

v.

Samuel T. MACRANE, Jr., et al., Defendants–Appellees.

No. 94–3285.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1995.

Decided April 19, 1995.

Timothy T. McLaughlin (argued), Oak Lawn, IL, for plaintiff-appellant.

Thomas G. DiCianni, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, Michael M. Roth, Howard P. Levine, Paul L. Stephanides (argued), City of Naperville, Naperville, IL, for defendants-appellees.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Basim Esmail, a liquor dealer in Naperville, Illinois, brought suit in federal district court under 42 U.S.C. § 1983, complaining that he was being persecuted by the Mayor of Naperville in violation of Esmail's right to the equal protection of the laws. The district judge dismissed the suit for failure to state a claim, and we must therefore take the facts alleged in the complaint as true, though of course without warranting that they are true.

The complaint is 22 pages long and contains 50 paragraphs. It unfolds the following story, which we simplify slightly. Esmail has owned a liquor store in Naperville since 1981. He had a retail liquor license issued by the city and renewable annually. It was renewed until 1992. When in January of that year he applied for the renewal of his license, and also for a second license at another location in the city, the city notified him that its prosecutor would move that both applications be denied. And this on three grounds: He had given beer and champagne to a minor; one of his managers had failed to register as the manager of a liquor store, as required by the municipal code; and Esmail had omitted from his application form the fact, required to be disclosed on the form, that his license had been revoked. The true facts were these: Esmail, a leader in efforts to prevent the sale of liquor to minors, had used Stacey Hicks, a 19-year-old, to conduct a sting operation against his own store in order to discover whether a salesperson who he suspected of selling alcoholic beverages to minors was actually guilty. He had not bought Stacey Hicks beer or given her a bottle of champagne. She had bought the beer herself, had gotten drunk and fallen in the mud, had stolen the bottle of champagne, and had charged Esmail with sexual assault when he helped her clean off the mud. The phony charge of sexual assault was dropped. The episode had serendipitously been videotaped, and the videotape showed that Esmail really had been cleaning off the mud on her, not sexually assaulting her. And the unregistered manager had been on duty only an hour and a half; this is not in the complaint, but it is in an opinion of the Illinois Appellate Court, about which more shortly. As for the failure to disclose a revocation, it is true that back in 1985 Esmail's license had been revoked because he had bought a glass of beer for an underage female. But the offense had not been committed in Naperville. And on appeal the state liquor control commission had reduced the revocation to a thirty-day suspension—and Esmail had disclosed the suspension on every application for renewal that he had filed after 1985.

The mayor, who is also Naperville's liquor control commissioner, found Esmail guilty on all but the charge of having given Stacey Hicks a bottle of champagne, and ordered his license revoked and the application for a second license denied. After exhausting his administrative remedies, Esmail turned to the state courts, which ordered that both his application for a renewal of his original license and his application for a second license be granted. Esmail's only violation of law, the courts found, had been the employment of the unregistered manager for an hour and a half, and that violation was *de minimis*.

So what is Esmail complaining about? He is complaining that the mayor forced him to incur $75,000 in legal expenses to get his license applications finally granted through the intervention of the state courts. Why did

the mayor do this? Because, the complaint charges, he and other city officials had developed a "deep-seated animosity" toward Esmail. The animosity was due in part to Esmail's success in getting the 1985 revocation order (issued by Mayor Macrane's predecessor) changed to a brief suspension, in part to Esmail's advertising campaign against the sale of liquor to minors—why that should distress the mayor is not explained, but it is presumably because the ads accused the city of ineffectual enforcement of the law—and in part to Esmail's having withdrawn political and financial support from the mayor after Esmail learned that the mayor was trying to destroy his business. The complaint does not allege, however, as one might have expected, any violation of Esmail's rights under the First Amendment. The mayor's "campaign of vengeance" against Esmail is alleged to have consisted not only in trying to deny him his liquor licenses but also in causing the Naperville police to harass Esmail and his employees with constant, intrusive surveillance, in causing the police to stop his car repeatedly and force him to undergo field sobriety tests, and in causing false criminal charges to be lodged against him.

The denial of equal protection is alleged to lie in the mayor's having denied Esmail's two license applications in 1992 on the basis of trivial or trumped-up charges while "maintain[ing] a policy and practice of routinely granting new liquor licenses as well as renewing existing licenses requested by persons who had engaged in the same or similar conduct, ... for the sole and exclusive purpose of exacting retaliation and vengeance against" Esmail. A list of examples follows—and they are arguably of more serious infractions than Esmail was charged with, yet were punished lightly or not at all. A liquor license was granted to Mike Ditka, the former coach of the Chicago Bears, even though he had been placed under court supervision for driving under the influence of alcohol. The license of a liquor dealer who had three convictions for driving under the influence of alcohol was not revoked or suspended. The license of a dealer who had committed battery against Naperville police officers was renewed. A license was issued to an individual who had been convicted of a felony drug charge and whose store manager had served four years in federal prison on drug charges. A seven-day suspension was the only punishment of a licensee who stayed open after the legally mandated closing hours, served liquor to minors and a drunk, did not have a manager on duty (as required by law), and mouthed off in a hostile and obscene manner to the Naperville police officer who was investigating these violations. The enumeration of instances of unequal treatment in the complaint, though extensive, is not exhaustive, since the plaintiff had not conducted discovery, the suit having been dismissed on the pleadings.

■ This is an unusual kind of equal protection case, though not an unprecedented kind. The common kinds are two. One involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment. See, e.g., *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). The other, which rarely succeeds nowadays, involves challenges to laws or policies alleged to make irrational distinctions, *Lindsey v. Normet*, 405 U.S. 56, 74–79, 92 S.Ct. 862, 874–77, 31 L.Ed.2d 36 (1972), for example in tax rates. See, e.g., *U.S. Railroad Retirement Board v. Fritz*, 449 U.S. 166, 175–77, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980). This case fits neither mold. The charge here is that a powerful public official picked on a person out of sheer vindictiveness; and we must consider what standing such a charge has in the law of equal protection. The mayor argues none, that this is just a case of "selective prosecution." This term has two meanings in law. The first is simply failing to prosecute all known lawbreakers, whether because of ineptitude or (more commonly) because of lack of adequate resources. The resulting pattern of nonenforcement may be random, or an effort may be made to get the most bang for the prosecutorial buck by concentrating on the most newsworthy lawbreakers, but in either case the result is that people who are equally guilty of crimes or other violations receive unequal treatment, with some being punished and others getting off scot-free.

That form of selective prosecution, although it involves dramatically unequal legal treatment, has no standing in equal protection law. *Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *United States v. Smith,* 953 F.2d 1060, 1063 (7th Cir.1992). The second form of selective prosecution, and the only one that is actionable under the federal Constitution, is where the decision to prosecute is made either in retaliation for the exercise of a constitutional right, such as the right to free speech or to the free exercise of religion, or because of membership in a vulnerable group. E.g., *Wayte v. United States, supra,* 470 U.S. at 608, 105 S.Ct. at 1531.

This case is not pleaded as a case of selective prosecution in any of the above senses. In particular, Esmail is not complaining merely that equally or more guilty liquor licensees than he are treated more leniently. He is complaining about an orchestrated campaign of official harassment directed against him out of sheer malice. The district judge thought that the complaint failed to state a claim because it failed to allege that the liquor dealers who were not subject to the campaign of harassment received their grants or renewals *at the same time* as the campaign against Esmail, or that anyone had escaped being sanctioned for including (as he had been charged with doing) false information in his application. The absence of these allegations, the district court reasoned, contradicted the allegation that these other dealers had engaged in the "same or similar" conduct as Esmail. This is reading a complaint too closely. It is true that a plaintiff can plead himself out of court by an overly prolix complaint, *Conn v. GATX Terminals Corp.,* 18 F.3d 417, 419 (7th Cir.1994); *Fryman v. United States,* 901 F.2d 79, 82 (7th Cir.1990), as this one undoubtedly was. The longer the complaint, the more likely it is to allege a fact that shows that the plaintiff has no claim. But an omission is not an admission. The fact that Esmail's complaint failed to list the dates of the infractions by the other dealers is not an admission that those infractions occurred in another era. (Mayor Macrane did not take office until 1991.)

There is a deeper objection to the district judge's analysis. It is that equal protection does not just mean treating identically situated persons identically. If a bad person is treated better than a good person, this is just as much an example of unequal treatment as when a bad person is treated better than an equally bad person or a good person worse than an equally good person. That has been understood since Aristotle invented the antecedent of our concept of equal protection more than two millennia ago. If the liquor dealers enumerated in Esmail's complaint committed worse infractions than he was charged with but were let off with lighter or no sanctions, this was unequal treatment. It would not in itself establish a claim under the equal protection clause, because nonactionable selective prosecution produces exactly such inequalities. The distinctive feature here, which the district judge did not discuss, is that the unequal treatment is alleged to have been the result solely of a vindictive campaign by the mayor.

Our decision in *Ciechon v. City of Chicago,* 686 F.2d 511 (7th Cir.1982), holds that such conduct, so motivated, violates the equal protection clause; and the holding, although it has rarely brought ultimate victory to a plaintiff, does not stand alone. *Vukadinovich v. Board of School Trustees,* 978 F.2d 403, 414 and n. 9 (7th Cir.1992); *Chicago Cable Communications v. Chicago Cable Commission,* 879 F.2d 1540, 1547 (7th Cir. 1989); *Yerardi's Moody Street Restaurant v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989); *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981). The principle it states is no doubt subject to abuse by persons whose real complaint is selective prosecution in the sense that is not cognizable in suits to enforce the equal protection clause. But it strikes us as sound. If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court. This was implied by the Supreme Court in *City of Cleburne v. Cleburne Living Center, Inc., supra,* 473 U.S. at 446–47, 105 S.Ct. at 3257–58, when it pointed out that some objectives of state action simply are illegitimate and will not

support actions challenged as denials of equal protection. Although the courts of Illinois seem to have been perfectly ready, willing, and able to protect Esmail against Mayor Macrane, powerful state or local officials are not infrequently able to overawe state or local courts.

■ It is true that the abuse charged in this case is remote from the primary concern of the framers of the equal protection clause. *Strauder v. West Virginia*, 100 U.S. 303, 306–07, 25 L.Ed. 664 (1879); *Palmer v. Thompson*, 403 U.S. 217, 220, 91 S.Ct. 1940, 1942, 29 L.Ed.2d 438 (1971). But neither in terms nor in interpretation is the clause limited to protecting members of identifiable groups. It has long been understood to provide a kind of last-ditch protection against governmental action wholly impossible to relate to legitimate governmental objectives. *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 342 (7th Cir.1991). In *Falls v. Town of Dyer*, 875 F.2d 146, 147 (7th Cir.1989), we gave as an example "an ordinance saying: 'No one whose last name begins with "F" may use a portable sign in front of a 24–hour food shop, but everyone else may.'" Implicit in the example is the assumption that there is no nondisreputable reason for singling out persons whose last name begins with "F" for unfavorable treatment, since the mere fact of singling out does not present an issue of denial of equal protection. *Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir.1992), aff'd, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Herro v. City of Milwaukee*, 44 F.3d 550, 552–53 (7th Cir. 1995).

■ If the allegations of the complaint in this case are true, the case is within the orbit of *Ciechon* and *Falls*. However, *Wroblewski v. City of Washburn*, 965 F.2d 452, 458–59 (7th Cir.1992), pointed out that *Falls* is in tension with several of our other opinions, such as *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990), and *Smith v. Town of Eaton*, 910 F.2d 1469, 1473 (7th Cir.1990). Those cases (and also *Herro v. City of Milwaukee, supra*, 44 F.3d at 553) suggest, though without holding, that a class must have more than one member for discrimination against the class to count as a denial of equal protection. (Falls was the only member of his class.) These opinions do not cite *Ciechon;* and other opinions, illustrated by *Ben–Shalom v. Marsh*, 881 F.2d 454, 466 (7th Cir.1989), point out sensibly that classifications should be scrutinized more carefully the smaller and more vulnerable the class is. A class of one is likely to be the most vulnerable of all, and we do not understand therefore why it should be denied the protection of the equal protection clause.

■ Esmail's suit thus is not barred by the "class of one" rule, because there is no such rule. Nor is it barred by the principle that malicious prosecution does not work a deprivation of property and therefore is not actionable in a civil rights suit based on the due process clause of the Fourteenth Amendment. *Smart v. Board of Trustees*, 34 F.3d 432, 434 (7th Cir.1994); *Buckley v. Fitzsimmons*, 20 F.3d 789, 798 (7th Cir.1994). Esmail has taken a different route, that of the equal protection clause, which does not require proof of a deprivation of life, liberty, or property. What it does require, and what Esmail may or may not be able to prove, is that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective. This is more demanding than merely having to prove that a prosecution lacked probable cause, the meaning of "malice" in the tort of malicious prosecution. We noted the difference in the burdens of proof in *Albright v. Oliver, supra*, 975 F.2d at 348.

The complaint states a claim, and therefore the suit should not have been dismissed.

REVERSED AND REMANDED.