King's Grant Inn v. Gilford, NH          CV-03-249-SM  11/19/04

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


King's Grant Inn,
     Plaintiff

     v.                                   Civil No. 03-249-SM
                                          Opinion No. 2004 DNH 166
Town of Gilford; and
Gilford Board of Selectmen,
     Defendants


**O R D E R**


King's Grant Inn seeks redress under 42 U.S.C. § 1983, for alleged violations of its rights under the First Amendment, due process clause,[1] and equal protection clause of the United States Constitution.  Specifically, plaintiff seeks declaratory and injunctive relief, as well as damages, arising from the local government's denial of its applications for permits to provide exotic dancing entertainment on its premises.  Before the court is defendants' motion for summary judgment.  Plaintiff objects.  For the reasons given, defendants' motion for summary judgment is granted in part and denied in part.

---

[1] Plaintiff asserts violations of its rights to both procedural and substantive due process.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986)).

"The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"Once the movant has served a properly supported motion asserting entitlement to summary judgment, the burden is on the nonmoving party to present evidence showing the existence of a trialworthy issue." Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) (citing Anderson, 477 U.S. at 248; Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). To

meet that burden the nonmoving party, may not rely on "bare allegations in [his or her] unsworn pleadings or in a lawyer's brief." Id. (citing Rogan v. City of Boston, 267 F.3d 24, 29 (1st Cir. 2001); Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994)). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Acqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

## Background

King's Grant Inn ("King's Grant" or "the Inn") is a bar and restaurant, located in Gilford, New Hampshire. It provides various forms of entertainment for its patrons. Because King's Grant holds a New Hampshire liquor license, it must obtain written authorization from the Town of Gilford ("the Town") before providing entertainment of any type. N.H. REV. STAT. ANN. ("RSA") § 179:19, II. The Town has adopted a policy under which it authorizes different types of entertainment: (1) "general

3

entertainment and public dancing;" and (2) "exotic dancing and other unusual entertainment."[2]  (Def.'s Mot. Summ. J., Ex. B.) That policy includes the following relevant provisions:

>    (3) The Town shall grant or conditionally deny authorization to provide exotic dancing or other types of unusual entertainment based upon:
>
>    . . .
>
>    (e) Whether the licensee or the proposed performers have a significant history of violating alcoholic beverage control laws or laws relating to public performances in any jurisdiction in the United States, or whether the licensee and the proposed performers may not otherwise be relied upon to comply fully with all state, federal and local laws, ordinances, and rules with regard to their activities in promoting or providing the proposed entertainment.

---

[2] According to Gilford's Policy Statement on Entertainment and Dancing, "unusual entertainment" is a broad term that includes several categories, including exotic dancing.  "Exotic dancing," in turn, is defined as:

>    a type of unusual entertainment in which the primary content and purpose is to make sexually explicit gestures or movements, to display nude human figures, or to display persons wearing minimal clothing designed to expose female breasts or male or female buttocks or genitalia, and includes, but is not limited to, strip tease routines in which clothing is removed during the course of the performance.

(Def.'s Mot. Summ. J., Ex. B.)

4

(Def.'s Mot. Summ. J., Ex. B.)

King's Grant Inn does not have a perfect record of compliance with New Hampshire's liquor laws. It was given an oral warning for underage drinking on August 19, 2000, and was twice fined $250 by the Enforcement Division of the New Hampshire Liquor Commission for allowing underage persons to possess alcoholic beverages – on September 29, 2000, and again on February 5, 2001. (Def.'s Mot. Summ. J., Ex. G.) Notwithstanding those three violations, the Gilford Board of Selectmen granted permission to stage approximately sixty performances of exotic dancing from June through December of 2001. (Pl.'s Obj. to Summ. J., Ex. 1.)

Between January 17, 2002, and July 11, 2002, King's Grant asked the Selectmen to authorize exotic dancing on seven separate occasions. During that time, Robert A. Walter, Lawrence M. Routhier, and Dennis J. Doten served as Gilford Selectmen. Each

of the Inn's applications was routinely approved by unanimous vote. (Pl.'s Obj. to Summ. J., Exs. 2-8.)

On June 24, 2002, however, the Selectmen issued the following statement:

> The Gilford Board of Selectmen conducted an evidentiary hearing on Friday, June 21, 2002 (and continued on Monday, June 24, 2002) on alleged violations of "house rules and regulations" submitted to the Board by the King's Grant Inn as part of the permit application process to conduct "Exotic Dancing" and "Unusual Entertainment" events. No substantiated incidents of criminal conduct were alleged nor found.
>
> After deliberation, the Board finds that violations of the rules and regulations did occur on various occasions. Consequently, it is the intent of the Board to deny adult entertainment permits for the King's Grant Inn for a period of 30 days, effective June 21, 2002.

(Pl.'s Obj. to Summ. J., Ex. 13.)

By the time the Selectmen met on August 22, 2002, Selectman Walter had been replaced by Alice H. Boucher. (Pl.'s Obj. to Summ. J., Ex. 9.) At the August 22nd meeting, King's Grant sought authorization to present exotic dancing in August and

6

September.  (Id.)  The Selectmen "discussed the increased number of permit requests" and the Inn "agreed to eliminate the requests for Sundays and Mondays and further agreed to amend the sign in front of the establishment from 'Exotic Dancing' to 'Gentlemen's Club.'"  (Id.)  Subsequently, the Selectmen voted 2-0 to approve the permit request; Selectman Boucher abstained.  (Id.)

Unhappily, also on August 22, 2002, King's Grant sold or served alcohol to an intoxicated person, for which it was fined $500 by the New Hampshire Liquor Commission.  (Def.'s Mot. Summ. J., Ex. G.)  The Inn's next two permit requests came before the Selectmen on September 19, 2002, and October 17, 2002, respectively.  Each was approved on a 1-0 vote; both Selectman Boucher and Selectman Routhier abstained.  (Pl.'s Obj. to Summ. J., Exs. 10-11.)  Nothing in the minutes of the September 19th and October 17th meetings suggest that the Inn's past history of compliance with liquor laws was discussed.

On November 14, 2002, King's Grant allowed a minor to possess or consume alcoholic beverages, for which it was fined $1,000 by the New Hampshire Liquor Commission.  (Def.'s Mot.

7

Summ. J., Ex. G.)  At its December 5, 2002, meeting, the Selectmen voted (2-0, with one abstention) to withhold exotic dancing permits from King's Grant for forty-five days, based upon its admission that an exotic dancing event had taken place without a permit.  (Pl.'s Obj. to Summ. J., Ex. 12.)  The minutes of the December 5th meeting do not suggest that the Inn's history of compliance with liquor laws was discussed.

Municipal elections held in March of 2003 resulted in Kinney O'Rourke's replacing Lawrence Routhier on the Board of Selectmen. Approximately two weeks after his election, in a conversation with Jane A. Bergeron, Selectman O'Rourke "stated his determination that the King's Grant Inn getting permits for exotic dancing was not going to be approved now that he had a voice on the Board."  (Pl.'s Obj. to Summ. J., Ex. 14.)

On March 24, 2003, King's Grant applied for an exotic dancing permit.  (Def.'s Mot. Summ. J., Ex. A.)  The Selectmen next met on April 3, 2003.  Selectman O'Rourke "questioned the nature and status of pending alleged liquor license violations" and "expressed his discomfort in addressing the [permit request]

8

before the liquor license allegations have been adjudicated." (<u>Id.</u>, Ex. C.) The Selectmen voted 2-1 to table the Inn's request in order to await the outcome of pending allegations of liquor law violations. (<u>Id.</u>)

On April 7, 2003, the Inn again applied for an exotic dancing permit. (Def.'s Mot. Summ. J., Ex. D.) At the Selectmen's April 17, 2003, meeting, Selectmen O'Rourke read a prepared statement that included the following relevant comments:

> My difficulty with this application for the Board of Selectmen's authorization to provide exotic dancing is based upon the fact that the applicant/licensee has – in the words of Sec. III(3)(e) of the Gilford Board of Selectmen's Policy Statement Governing Entertainment within the Town dated July 8, 1998 – <u>a significant history of violating alcoholic beverage control laws . . . in any jurisdiction of the United States.</u>
>
> According to information provided to me by the Enforcement Division of the NH Liquor Commission, the applicant has been convicted of the following violations of the New Hampshire liquor laws and regulations:
>
> > August 19, 2000 – verbal warning/under age drinking

September 29, 2000 – allowing underage person to
                    possess/consume alcoholic
                    beverages – $250.00 fine


February 5, 2001 – allowing underage person to
                    possess/consume alcoholic
                    beverages – $250.00 fine


August 22, 2002 – sold or served intoxicated
                    person – $500 fine


November 14, 2002 – allowed minor (20) to possess
                    or consume alcoholic beverages
                    – $1000.00 fine


In addition, the applicant has the following
allegations pending before the NH Liquor Commission:


    #1 – Interference with a Liquor Commission
    investigation (08-04-02)


    #2 – November 20, 2002, Unauthorized
    entertainment, no designated person in charge[3]


    #3 – January 9, 2003 – advertising special drink
    prices.

---

[3] While the record is not entirely clear on this point, the November 20, 2002, incident to which Selectman O'Rourke referred appears to be the same incident that lead to the forty-five day suspension of the Inn's right to apply for exotic dancing permits, imposed by the Selectmen at the December 5, 2002, meeting.

These violations and allegations, all of them occurring within the past thirty-three months, clearly suggests that the applicant has a significant history of violating the alcoholic beverage control laws of the State of New Hampshire.

(Id., Ex. G (emphasis in the original).)  The minutes of the meeting record that Selectmen Boucher and O'Rourke "stat[ed] that the previous liquor and permit violations [enumerated above] could be viewed as '. . . significant history of violating alcoholic beverage control laws or laws relating to public performances . . .'"  (Id.)  However, "Selectman Doten disagreed with the other Selectmen and stated that he does not believe that there has been a significant history of violations and that the permit should be granted."  (Id.)  By a 2-1 margin, the Selectmen voted to deny both the March 24, 2003, application and the April 7, 2003, application.  (Id.)

On May 5, 2003, and June 2, 2003, King's Grant filed additional applications for exotic dancing permits (Def.'s Mot. Summ. J., Exs. H & K), which were denied by identical 2-1 votes (Id., Exs. I & L).

11

On July 14, 2004, the Selectmen met and considered an exotic dancing permit application filed by Will Drew, president of Jamacanam, Inc. d/b/a Cocomo's.[4] "Selectman Boucher stated that she believed that Mr. Drew is inextricably linked to the former managers of the business and that the owner has some responsibility for the conduct of the business." (Pl.'s Obj. to Summ. J., Ex 16.) After "Selectman O'Rourke noted what he considered past significant instances of liquor law violations and [his belief] that future violations would occur," (id.), Drew's permit application was denied on a 1-1 vote, with Selectman Boucher abstaining (id.).

The Selectmen met again on July 28, 2004, and considered another exotic dancing permit application from Drew. That application was also denied, on a 1-1 vote, with an abstention. (Pl.'s Obj. to Summ. J., Ex. 19.) Prior to the vote, "[i]t was learned that a 5-day liquor license suspension had been imposed by the NH Liquor Commission [upon] Mr. Drew for his failure to attend a mandatory educational seminar" (id.), and "Selectman

---

[4] In the permit application, the address given for Cocomo's was the same address previously given by King's Grant Inn in its permit applications.

O'Rourke requested that the record reflect that his vote in opposition was due to his belief that a strong likelihood existed for future violations and that his decision was based on that section of the Entertainment Policy" (id.).

Finally, at the August 25, 2004, meeting, another exotic dancing permit application from Drew was denied, this time on a 2-1 vote. (Pl.'s Obj. to Summ. J., Ex. 21.) At that meeting, Selectman O'Rourke read a prepared statement that included the following relevant comments:

> The applicant has also suggested (perhaps argued) that I have pre-judged his application; [that] I have a moral objection to the adult entertainment he proposes.

> Neither is the case. I am not now basing, nor have I ever based, my vote on any of the applications by either King's Grant Inn or any other entity that has operated or is operating that property on the grounds that I have a moral objection to the type of entertainment that the applicant is proposing.

> In the case of Mr. Drew's applications for an adult entertainment license, my vote has been consistently based upon what I believe [is] his long association with the King's Grant Inn property and his business relationships with a prior licensee who

13

1.  has been found in violation of New Hampshire's liquor laws on a number of occasions and

2.  was recently convicted of a Class B felony (interfering with a liquor commission investigation) committed on that property

What this actually means is that my vote on this and similar applications is based upon evidence, using the language of Gilford's adult entertainment policy, that there is a strong likelihood that the "licensee (applicant) and the proposed performers may not otherwise be relied upon to comply fully with all state, federal, and local laws, ordinances, and rules with regard to their activities in promoting or providing the proposed entertainment" . . .

(Id.) Selectman Boucher also made a statement, "explaining that after much thought, she ha[d] decided to vote rather than abstain on this issue." (Id.)

Based upon the denials of its applications for exotic dancing permits on April 17, May 5, and June 2, 2003, King's Grant brought suit (document no. 1) and petitioned for declaratory judgment (document no. 2). In its complaint, King's Grant asserts that the Town violated its rights under the First Amendment (Counts I and II), the due process clause (Count III),

14

and the equal protection clause (Count IV) of the United States Constitution.  Count V is a claim for damages arising from the constitutional violations alleged in Counts I-IV.  In its petition for declaratory judgment, King's Grant asks the court to declare that section III(3)(e) of the Town's Policy Statement on Entertainment and Dancing is void for vagueness and unenforceable as applied.

## Discussion

Defendants move for summary judgment on Counts I-IV, and argue that the individual members of the Board of Selectmen are entitled to qualified immunity.  Plaintiff objects, categorically.

A.  Counts I and II

In Count I, plaintiff asserts that the Town's exotic dancing policy is facially unconstitutional, vague and overbroad, and unenforceable.  In Count II, plaintiff asserts that defendants violated its First Amendment right to free speech by arbitrarily, unreasonably, and capriciously denying the permit applications at

15

issue. Defendants counter that they are entitled to summary judgment on Counts I and II because the Town's policy regulating exotic dancing is a permissible, content-neutral, time, place, and manner restriction on speech similar to zoning regulations upheld by the United States Supreme Court in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986). Plaintiff replies that the policy is not content-neutral and, even if it were, it cannot survive intermediate scrutiny (which is applicable to content-neutral time, place, and manner restrictions on speech), much less the strict scrutiny it actually deserves as a content-based restriction.

Both parties appear to misapprehend the nature of the regulation at issue here. The Gilford policy is plainly not a zoning ordinance aimed at restricting exotic dancing to particular geographic locations in order to protect the Town from the secondary effects often associated with such entertainment.[5]

---

[5] If the Gilford exotic dancing policy were such a regulation, it would likely fail. The record discloses no suggestion that the Town, before enacting the policy, collected or examined evidence pertaining to likely adverse secondary effects of exotic dancing. See Renton, 475 U.S. at 50-52; Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251, 1267 (11th Cir. 2003) ("This Court has held that Renton requires

16

See, e.g., Renton; 475 U.S. at 44; D.H.L. Assocs., Inc. v.
O'Gorman, 199 F.3d 50, 52-53 (1st Cir. 1999); Saints & Sinners v.
City of Providence, 172 F. Supp. 2d 348, 352 (D.R.I. 2001).
Rather, the Gilford policy is more akin to a licensing scheme
that effectively operates as a form of prior restraint on a
particular type of artistic speech.  See FW/PBS, Inc. v. City of
Dallas, 493 U.S. 215, 224-25 (1990) (explaining that Dallas's
licensing scheme, targeting businesses engaged in
constitutionally protected sexually explicit speech, was a prior
restraint, subject to a facial challenge); D.H.L., 199 F.3d at 56
n.3 (quoting 11126 Baltimore Blvd., Inc. v. Prince George's

---

at least some pre-enactment evidence.") (citing Ranch House v.
Amerson, 238 F.3d 1273, 1283 (11th Cir. 2001) ("[S]tate actors in
Defendants' position must cite to some meaningful indication – in
the language of the code or in the legislative proceedings – that
the legislature's purpose in enacting the challenged statute was
a concern over secondary effects rather than merely opposition to
proscribed expression") (emphasis original); Flanigan's Enters.,
Inc. v. Fulton County, 242 F.3d 976, 986 (11th Cir. 2001) (the
court may not simply presume the evidence needed to sustain a
secondary effects ordinance because "where the right to free
speech is at issue, the government bears the burden of showing
that the articulated concern has more than merely speculative
factual grounds, and that it actually was a motivating factor")).
Moreover, defendants have not identified any legally sufficient
secondary effects, that is, adverse effects resulting from exotic
dancing.  On this record, as defendants have developed it for
summary judgment, there is no evidence that liquor law violations
result from exotic dancing performances.

17

County, Md., 58 F.3d 988, 995 (4th Cir. 1995) ("Following the decision in Renton, the [Supreme] Court has made it clear that otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to engaging in protected speech must be analyzed as prior restraints and are unconstitutional if they do not limit the discretion of the decisionmaker and provide for . . . procedural safeguards.").

"While '[p]rior restraints are not unconstitutional per se . . . [a]ny system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity." FW/PBS, 493 U.S. at 225 (quoting Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558 (1975)).

> It is settled by a long line of recent decisions of [the Supreme] Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

18

*Id.* at 226 (quoting <u>Shuttlesworth v. City of Birmingham</u>, 394 U.S. 147, 151 (1969)).

More specifically "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without <u>narrow, objective, and definite standards</u> to guide the licensing authority, is unconstitutional." <u>Fly Fish, Inc. v. City of Cocoa Beach</u>, 337 F.3d 1301, 1313 (11th Cir. 2003) (quoting <u>Shuttlesworth</u>, 394 U.S. at 150-51; citing <u>Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 757 (1988) (emphasis added)). "Without the constraint of specific standards to guide the decisionmaker in judging whether a license should issue, an impermissible danger exists that a government official may decide to exercise his [or her] judgment to suppress speech he [or she] personally finds distasteful or that an applicant may feel compelled to censor his own speech." <u>11126 Baltimore Blvd.</u>, 58 F.3d at 994 (citing <u>Lakewood</u>, 486 U.S. at 757-58; <u>Southeastern Promotions</u>, 420 U.S. at 553). Regarding the degree of discretion that may be vested in public officials,

> statutes may not give public officials "unbridled" discretion to deny permission to engage in

19

> constitutionally protected expression.  This implies that some measure of discretion is acceptable, but . . . virtually any amount of discretion beyond the merely ministerial is suspect.

Fly Fish, 337 F.3d at 1313 (quoting Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir. 1999)).

In Fly Fish, the City of Cocoa Beach enacted an ordinance that provided, in pertinent part:

> that the City may deny an applicant a license if "the granting of the application would violate either a statute or ordinance or an order from a Court of law that effectively prohibits the applicant from obtaining an adult entertainment establishment license," or if the applicant fails to comply with Florida law regarding corporations, partnerships, or fictitious names.

337 F.3d at 1312 (quoting Ordinance 1204, §§ 2.5-12(c)(1)(E) & (F)).  The court of appeals ruled that the ordinance constituted a prior restraint on protected expression, id. at 1313, and held it to be unconstitutional because it "exceed[ed] the limits of permissible 'ministerial discretion,'" id. at 1313.

20

Because defendants' motion for summary judgment, is based upon a legal theory inapplicable to the facts presented, they are, of course, not entitled to judgment on Counts I and II, at least, not as argued. Moreover, given the applicable legal principles, it seems possible – if not probable on this record, that King's Grant Inn is entitled to judgment as a matter of law on its facial challenge to the Town's policy regulating exotic dancing performances.

The court cannot grant summary judgment in favor of plaintiff, however, without first affording defendants notice and an opportunity to develop and present an objection and supporting legal argument. See United States v. Hoyts Cinemas Corp., 380 F.3d 558, 569 (1st Cir. 2004) (citations omitted). Accordingly, defendants are directed to show cause why summary judgment should not be entered in favor of plaintiff, on grounds that the Town's policy regulating exotic dancing performances constitutes a facially unconstitutional and invalid prior restraint on speech protected by the First Amendment.

21

B. <u>Count III</u>

In Count III, plaintiff asserts that defendants violated its rights to substantive and procedural due process by denying applications for exotic dancing permits on grounds that it had a "significant history of violating alcoholic beverage control laws," without stating, or applying any objective means in determining, what constitutes a "significant history" (thus leaving it up to the unbridled and subjective discretion of each Selectman). Defendants argue that they are entitled to summary judgment on Count III because plaintiff had no protected property interest in a permit to conduct exotic dancing, and, even if it had such a property right, it was given adequate process and was not subjected to any conduct egregious enough to shock the conscience, when denied the required permits.

The substantive issue plaintiff raises in Count III – vagueness of the exotic dancing policy's "significant history" provision – is the same issue raised in Count I. Moreover, the degree to which that policy provision can be said to be "narrow, objective, and definite," <u>Fly Fish</u>, 337 F.3d at 1313, is precisely the test applicable in determining whether the policy

22

provision qualifies as a valid prior restraint.  Thus, Count III is, in reality, plaintiff's First Amendment claim restated in the language of due process.  For that reason, Count III is dismissed as merely duplicative of Count I.


C.   Count IV

In Count IV, plaintiff asserts that defendants violated its right to equal protection of the laws when they treated it differently from other applicants for permits to conduct unusual entertainment and exotic dancing.  Defendants move for summary judgment on several grounds, principally that plaintiff failed to adequately allege that it was treated in a substantially different manner than other members of the class of applicants for unusual entertainment and exotic dancing permits.  In its objection, plaintiff shifts its equal protection theory somewhat, citing Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995), and arguing that a public official's deep-seated animosity toward a license applicant, when that animosity leads to the denial of an otherwise valid license application, can serve as the basis for "an unusual kind of equal protection case," id. at 178.

23

The difficulty with plaintiff's tweaked equal protection theory is that it does not allege that the Board of Selectmen, or any of its members, held any pronounced feelings of animosity toward King's Grant Inn. Rather, plaintiff alleged that two members of the Board held personal beliefs that necessarily resulted in their harboring biases against exotic dancing in general. That is, unlike the plaintiff in Esmail, King's Grant Inn has not alleged that other applicants with similar histories were granted permits while King's Grant was not, due to specific biases against King's Grant. Id. Accordingly, the Esmail theory does not apply to the facts of this case, as pled. To the contrary, plaintiff's basic claim in Count IV,[6] like its claim in Count III, is, as a practical matter, a re-stated First Amendment claim. Therefore, like Count III, Count IV is dismissed as merely duplicative of Count I.

---

[6] Plaintiff claims in Count IV that it was denied exotic dancing permits due to both the Board's disapproval of the message conveyed by exotic dancing, and the Board's use of an ill-defined standard, i.e., "a significant history of violating alcoholic beverage control laws."

24

D.  Qualified Immunity

The individual defendants argue that they are entitled to qualified immunity from civil damages.  Plaintiff counters that "a reasonable person would know that denial of permits for exotic dancing based upon personal beliefs and not on a consistent objective application of Town Policy is unlawful."  Because neither party has briefed the issues under applicable First Amendment legal standards, i.e., those pertaining to prior restraint issues, the question of qualified immunity is not yet ready for decision.


**Conclusion**

For the reasons given, defendant's motion for summary judgment (document no. 15) is granted in part and denied in part. The case now consists of plaintiff's First Amendment claims (Counts I and II) and its claim for damages (Count V); the other claims are dismissed.


Defendants shall show cause, within thirty days of the date of this order, why plaintiff is not entitled to summary judgment,

25

on grounds that the Town's policy regulating exotic dancing is facially unconstitutional as an unjustified prior restraint on protected speech. Should defendants wish to press their claim to qualified immunity, they should re-brief that issue as well, in the context of the legal standard the court has found applicable to the facts as presented by this record.

     **SO ORDERED.**

 

                                  _____

                                  Steven J. McAuliffe
                                  United States District Judge

November 19, 2004

cc:  David H. Bownes, Esq.
     R. Matthew Cairns, Esq.

26