**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2022, 10-2516
_____

KENNETH ZAHL, M.D.,
                                        Appellant

v.

THE NEW JERSEY DEPARTMENT OF LAW AND
PUBLIC SAFETY DIVISION OF CONSUMER AFFAIRS,
STATE BOARD OF MEDICAL EXAMINERS;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY;
STATE OF NEW JERSEY; DOUGLAS J. HARPER,
individually, and in his official capacity
as Senior Deputy Attorney General of the State of
New Jersey and as an appointed
Special Counsel to the Attorney General and the New Jersey State Board
of Medical Examiners; HARRY KOSOVSKY;
GERTRUDE KOSOVSKY; KAREN KOSOVSKY; KEVIN
MCKEOWN; BONNIE BLACKMAN, MD;
PHILLIP RUBINFELD, MD; MARY
SUE BRITTLE, JOHN AND JANE DOES 1-100

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 06-cv-03749)
District Judge: Honorable Jose L. Linares
_____

1

BEFORE:  BARRY, HARDIMAN and TASHIMA[*], Circuit Judges,

(Filed May 18, 2011)

OPINION

TASHIMA, Circuit Judge:

Dr. Kenneth Zahl brought this action alleging that New Jersey authorities criminally conspired with his ex-wife, her family, and his former employees to obtain revocation of Zahl's medical license.  The District Court dismissed Zahl's claims and twice denied him leave to amend.  Zahl appeals the denials of leave to amend.  We will affirm.

I

Zahl, an anesthesiologist, lost a divorce case in New York in 1999 and a professional disciplinary proceeding in New Jersey in 2006.  In the divorce proceeding, a New York court found that Zahl had "manipulated the finances of his solely owned corporation to reduce his income" in an effort to reduce his child

_____

[*]       The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

support obligations.  *Kosovsky v. Zahl*, 684 N.Y.S.2d 524, 526 (N.Y. App. Div. 1999).  In the professional disciplinary proceeding, the New Jersey Supreme Court affirmed the New Jersey Board of Medical Examiners' ("BME") revocation of Zahl's New Jersey medical license.  The Supreme Court upheld the BME's findings of Zahl's misconduct, summarizing them as follows:

> [O]ver a course of years and under varying circumstances, Zahl repeatedly engaged in deceitful and fraudulent conduct.  He over-billed Medicare, retained duplicate payments from his patient's insurance company, made misrepresentations to his own disability carrier, and inserted his colleagues' names into patient records for patients they did not treat.

*In re License Issued to Zahl*, 895 A.2d 437, 446 (N.J. 2006) ("*Zahl I*").  Later, the BME revoked Zahl's license a second time after finding that he had committed further violations during a stay of the first revocation order pending appeal.  *In re Zahl*, 2010 WL 4054235 (N.J. Super. Ct. App. Div. July 30, 2010), *cert. denied*, 13 A.3d 362 (N.J. 2011).

Zahl believes that the results of the divorce case and the professional disciplinary case followed from criminal conspiracies between state authorities and

3

persons surrounding his ex-wife. He filed an action in federal district court in New York alleging that his ex-wife and persons connected to her conspired with New York State Supreme Court justices during the divorce proceedings in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and other federal laws. *See Zahl v. Kosovsky*, 2011 WL 779784, at *1 (S.D.N.Y. Mar. 03, 2011); *id.* at *4 ("[Zahl] characterizes the Matrimonial Part of the New York State Supreme Court and other participants in the litigation and related matters as a 'Matrimonial Mafia Enterprise' and the 'NY Matrimonial Mafia Inc.' in connection with his RICO claims."). The district court dismissed the action on statute of limitations, abstention, and jurisdictional grounds. *Id.* at *6-*14.

Zahl filed this case based on similar allegations about the professional discipline proceeding. He named the BME, prosecutors at the New Jersey Attorney General's office, his ex-wife, his ex-wife's parents, and two of his former employees, among others, as defendants in a complaint that alleged a "calculated, vengeful and vindictive conspiratorial scheme to *extortionately* and *fraudulently* interfere with, deprive and obtain through wrongful means Dr. Zahl's right to practice medicine and right to conduct his business without fraudulent and extortionate influences and pressures." **A952** (amended complaint ¶ 122). He

4

asserted claims under RICO and 42 U.S.C. § 1983 (for violation of his equal protection rights), among other federal and state law claims.

In a series of six opinions issued between March 2008 and April 2010, the District Court dismissed all of the claims.[1] It also denied Zahl leave to file a proposed Second Amended Complaint ("SAC") and a proposed Third Amended Complaint ("TAC"), because it found that the proposed amendments did not state valid claims and were therefore futile. On this appeal, Zahl challenges only two of the District Court's rulings: (1) its denial of leave to file amended RICO claims in the SAC; and (2) its denial of leave to file an amended § 1983 equal protection claim in the TAC.

We briefly summarize Zahl's prolix factual allegations. **A86-93.** Defendant Bonnie Blackman, his former employee and an acquaintance of his ex-wife, initiated the disciplinary proceedings by filing a false complaint with the BME alleging that Zahl used improper billing practices. Zahl's ex-wife and her family, the Kosovskys, also provided false information to the BME through their private

---

[1] Only one defendant remained in the case after the District Court's six opinions: Mary Sue Brittle, Zahl's former administrative employee, who never appeared and against whom default was entered in 2009. **A8.** To enable Zahl's appeal, the District Court entered judgment under Fed. R. Civ. P. 54(b) with respect to all defendants, except Brittle. **A8.**

5

investigator, defendant Kevin McKeown. Defendant Phillip Rubinfield, an anesthesiologist with designs on Zahl's practice who testified at the disciplinary hearing, and defendant Brittle, Zahl's administrative employee, also provided false information during the investigation. Vindictive and malignant animus motivated all of these private (*i.e.*, non-governmental) defendants; their aim was to ruin Zahl, force him to leave the country for the Dominican Republic (where his mother was born), and, in the case of Rubinfield, to acquire his anesthesiology practice. The prosecutors assigned to the case, led by defendant Douglas Harper, shared the private defendants' vindictive and malignant animus, and they intentionally violated Zahl's constitutional rights during the disciplinary proceedings by withholding documents and suborning perjury.

## II

Although the parties do not raise the issue, we must first determine whether the District Court abused its discretion in certifying this case under Federal Rule of Civil Procedure 54(b), after finding no just reason to delay the appeal. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) ("[W]e apply an abuse of discretion standard of review to the District Court's determination that there is no just cause for delay."); *Gerardi v. Pelullo*, 16 F.3d 1363, 1368 (3d Cir.

6

1994) ("[W]e consider the validity of a Rule 54(b) certification ourselves.").  The

District Court had dismissed all defendants but one, Brittle, who had yet to appear

in the action.  As the District Court noted, our analysis of the claims against the

other defendants will apply to the claims against Brittle, foreclosing any possibility

that the certification will cause us to consider "the same issue a second time."

*Berckeley Inv. Grp.*, 455 F.3d at 203 (quoting *Allis-Chalmers Corp. v. Phila. Elec.*

*Co.*, 521 F.2d 360, 364 (3d Cir. 1975)).  Therefore, we conclude that the Rule 54(b)

certification was proper and that we have jurisdiction over this appeal.  *See Pichler*

*v. UNITE*, 542 F.3d 380, 385 n.6 (3d Cir. 2008).

We review the District Court's denial of leave to amend for abuse of

discretion, even when the denial is based on a finding of futility.  *Travelers Indem.*

*Co. v. Dammann & Co.*, 594 F.3d 238, 243 n.3 (3d Cir. 2010).

> Futility means that the complaint, as amended, would fail to state a
> claim upon which relief could be granted.  In determining whether a
> claim would be futile, the district court applies the same standard of
> legal sufficiency as applies under Federal Rule of Civil Procedure
> 12(b)(6).  If a district court concludes that an amendment is futile
> based upon its erroneous view of the law, it abuses its discretion.

*Id*. at 243 (citations, internal quotation marks, and alterations omitted).

In assessing a complaint's legal sufficiency, the court must accept all well-

pleaded facts as true and then "determine whether the facts alleged . . . are sufficient

7

to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). The complaint's factual allegations must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible . . . ." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III

Zahl argues that the District Court erroneously held that the "class of one" equal protection claim, asserted under § 1983 in the proposed TAC, was futile. The claim would assert that the state prosecutors, conspiring with the private defendants, sought revocation of Zahl's medical license out of "vindictive" and "malevolent" animus, rather than for legitimate reasons.

"[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To proceed on such a claim, the plaintiff must allege that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

8

(quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *Renchenski v. Williams*, 622 F.3d 315, 337-38 (3d Cir. 2010).

The TAC seeks to satisfy these requirements by alleging that other physicians who engaged in similar or more serious misconduct received more lenient discipline than Zahl. **A2097-99**. It also alleges that the prosecutors singled Zahl out for license revocation because they met with the private defendants and became "steeped in [their] malevolent animus towards Dr. Zahl." **A2090.** This malevolent animus, according to the TAC, drove the prosecutors to commit acts of misconduct, such as withholding exculpatory evidence and suborning perjury during the administrative proceedings. **A2094-95.**

The result of the professional disciplinary litigation undermines Zahl's claims. The federal courts must accord the New Jersey Supreme Court's decision whatever preclusive effect it would have in New Jersey courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give.") (internal quotation marks omitted); *Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). New Jersey follows the standard doctrine of issue preclusion,

9

which plainly bars re-litigation of Zahl's professional misconduct. *See Hernandez v. Region Nine Hous. Corp.*, 684 A.2d 1385, 1392 (N.J. 1996) (quoting *Restatement (Second) of Judgments* § 27 at 250 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.")). Therefore, for purposes of this action, it is established that Zahl "repeatedly engaged in deceitful and fraudulent conduct." *Zahl I*, 895 A.2d at 446.

In light of the state court findings, the TAC does not plausibly allege that prosecutors sought revocation of Zahl's license without a rational basis, as a "class of one" claim requires. Perhaps, as the TAC alleges, other physicians have kept their licenses after committing worse offenses (though, as defendants note, the allegations do not state that prosecutors declined to seek revocation in those cases). **A2097-99.** But prosecutorial decisions are necessarily subjective, and the TAC's list of comparators falls well short of creating a plausible inference that the prosecutors here had no rational basis for seeking to revoke the license of a doctor who repeatedly falsified patient records, overbilled Medicare, lied about his own disability status, and then blamed his employees and his ex-wife for his misconduct. *See United States v. LaBonte*, 520 U.S. 751, 762 (1997) ("[D]iscretion is an

10

integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors."); *Zahl I*, 895 A.2d at 444-45 (noting that the BME has the power to revoke the medical license of a physician who engages in fraud and deception).

Zahl argues that his claim is viable under *Esmail v. Macrane*, in which the Seventh Circuit held that a liquor store owner had adequately stated a "class of one" claim by alleging that city officials revoked his liquor license in a "spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state objective." 53 F.3d 176, 180 (7th Cir. 1995). But unlike the plaintiff in *Esmail*, who successfully recovered his liquor license when the state courts determined that he had not committed any appreciable misconduct, Zahl cannot plausibly allege that prosecutors targeted him for "reasons wholly unrelated to any legitimate state objective." *Id.* Rather, given the state courts' findings about Zahl's misconduct, the claim that New Jersey prosecutors pursued him for illegitimate reasons, without any rational basis, warrants dismissal under *Iqbal*. *See, e.g., Santiago v. Warminster Twp.*, 629 F.3d 121, 134 (3d Cir. 2010) (dismissing as implausible civil rights claim against police officer).

11

Because the proposed § 1983 equal protection claim fails against the state actors, it also fails against the private defendants, whose liability depends on their having acted in concert with the state actors. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (holding that § 1983 liability requires state action); *cf. Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977) ("A private citizen, acting in concert with public officials, is liable under § 1983.").

Because we conclude that Zahl's class of one equal protection claim is implausible in light of his established misconduct, we need not decide whether the District Court correctly concluded that *Engquist*, 553 U.S. 591, extends beyond the public employment context to bar "class of one" claims premised on prosecutorial decisions. *See United States v. Sanchez*, 562 F.3d 275, 279 (3d Cir. 2009) ("An appellate court may affirm a result reached by the District Court on different reasons, as long as the record supports the judgment.") (internal quotation marks omitted).

IV

Zahl also argues the District Court erroneously held that the RICO claims in the proposed SAC were futile. The SAC asserts RICO claims under 18 U.S.C. § 1962(b), (c), and (d), based on allegations that the defendants committed mail fraud,

12

wire fraud, and extortion in furtherance of a criminal conspiracy to deprive Zahl of his practice and medical license.

All of Zahl's proposed RICO claims require him to plead that the defendants engaged in a "pattern of racketeering activity." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989). This element contains two prongs. First, a plaintiff must show that the defendants' predicate crimes are "related" – that is, that the crimes have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics . . . ." *Id.* at 240 (quoting 18 U.S.C. § 3575). Second, and most relevant here, the plaintiff must show that the defendants' criminal conduct is "continuous" – that it "amount[s] to or threaten[s] long-term criminal activity." *Id.* at 243 n.4; *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) ("[R]elated predicate acts in furtherance of a single scheme can constitute a pattern if the acts constitute or present the threat of long-term continuous criminal activity.").

The Third Circuit considers the following factors as relevant to RICO continuity: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of

perpetrators, and the character of the unlawful activity." *Id.* at 1412-13 (quoting

*Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987).

We agree with the District Court that the SAC does not plead RICO

continuity. Although the SAC accuses the defendants of "fraud" in nearly every

sentence, it identifies only a few acts that, judging by the contents of the pleading

alone (without considering the state court litigation), might plausibly be construed

as fraudulent. Defendant Blackman, Zahl's former employee, is accused of making

false accusations about Zahl's professional misconduct. **A1448** (SAC ¶ 58); **A1449**

(SAC ¶ 62). Similarly, defendant McKeown, Zahl's ex-wife's private investigator,

is accused of providing authorities with false information about Zahl. **A1443** (SAC

¶ 35). Such concrete allegations of illegality collectively constitute a needle within

the haystack of the 98-page SAC. They are clearly insufficient plausibly to allege

that the defendants engaged in "long-term criminal activity." *See Kehr Packages*,

926 F.2d at 1414 (holding that the RICO-continuity analysis of an allegedly

fraudulent scheme must focus on "the instances of deceit constituting the underlying

fraudulent scheme").

Moreover, the outcome of the state court proceedings injects the RICO

claims with the same crippling implausibility that undermines the equal protection

14

claim.  The crux of Zahl's RICO theory is that the defendants conspired to deprive Zahl of his license and medical practice by falsely accusing him of professional fraud and deceit.  But the state court litigation has already conclusively established that Zahl did, in fact, engage in professional fraud and deceit.  Furthermore, many of the SAC's allegations about deceitful acts by the defendants are directly contradicted by the state courts' findings.  For example, the SAC accuses Blackman of falsely alleging to state investigators that Zahl improperly added her name to the records of procedures in which she was not involved, **A1450** (SAC ¶ 68), but the state courts found that these allegations were true.  *See Zahl I*, 895 A.2d at 446. Zahl would therefore be collaterally estopped from proving many of his already paltry allegations of criminality. *See Hernandez*, 684 A.2d at 1392.  As a result, the SAC falls well short of plausibly alleging RICO continuity; thus, the District Court correctly rejected the proposed RICO claims as futile.[2]

V

For all of the foregoing reasons, the judgment of the District Court will be

**AFFIRMED.**

---

[2]     Relying on *Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006), the District Court also held that allegations of a single malicious prosecution can never establish RICO continuity.  We need not, and do not reach this issue.

15